THOMPSON, Circuit Judge.
Sometimes it’s better to quit while you’re ahead. The district judge twice conducted plea colloquies and thrice imposed sentences for Carlos Sevilla-Oyola (“Sevilla”), each one shorter than the last. Still dissatisfied, Sevilla asks us for another bite at the sentencing apple before a different district judge. To support his claim before this court, Sevilla says the district judge lacked authority for actions taken after entry of the first sentence, and flaws in the initial plea colloquy warrant vacation of the first judgment. Alternatively, he says that even if the judge’s later actions were authorized, they were plagued by additional errors.
We agree that the district judge lacked statutory authority to act after he entered the original sentence and that the initial plea colloquy was flawed. But we cannot say that the imperfections Sevilla cites justify setting aside the first judgment. Nor can we say, based on the arguments Sevil-la puts forth before us, that the first sentence was unreasonable. Accordingly, the first and most severe sentence imposed by the district judge — 327 months plus a consecutive term of life imprisonment— stands. And Sevilla — who until today was *313 facing a total sentence of 405 months — -will likely find himself wishing he had left well enough alone.
BACKGROUND
On July 14, 2010, Sevilla and 108 code-fendants were indicted as part of a vast drug ring operating in and around several public housing projects in Bayamón, Puer-to Rico. The indictment charged Sevilla with (1) conspiring to possess narcotics with intent to distribute, in violation of 21 U.S.C. §§ 841(a), 860 (“Count One”), and (2) aiding and abetting his coconspirators in the use and carriage of firearms in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (“Count Two”). It singled out Sevilla as a leader, manager, and enforcer for the drug-trafficking organization.
A. The First Guilty Plea
On August 9, 2011, Sevilla entered into an agreement with the government, pleading guilty to both counts of the indictment. The parties stipulated that Sevilla was accountable for conspiring to possess at least 2 but less than 3.5 kilograms of cocaine. This amount pegged Sevilla’s base offense level at 28 under the U.S. Sentencing Guidelines (the “Guidelines”). See U.S.S.G. § 2D1.1. The parties further agreed that Sevilla would be subject to a two-level protected-location increase, see id. § 2D1.2(a)(l); a two-level leadership enhancement, see id. § 3Bl.l(c); and a three-level acceptance-of-responsibility reduction, see id. § 3E1.1, resulting in a total offense level of 29. The parties did not come together on Sevilla’s criminal-history category, but they agreed to forgo seeking further adjustments or departures.
In the agreement, Sevilla acknowledged that the district judge retained his sentencing discretion and was not bound by the parties’ accord. Sevilla also waived his right to appeal if the judge “accepted] [the] agreement and sentence[d] [him] according to its terms, conditions, and recommendations.”
At the change-of-plea hearing that same day, the district judge advised Sevilla of the statutory penalties for the charged offenses based on the stipulated drug quantity: (1) a mandatory minimum term of five years and a maximum term of eighty years of imprisonment as to Count One, see 21 U.S.C. §§ 841(b)(l)(ii), 860; and (2) a consecutive minimum term of five years of imprisonment as to Count Two, see 18 U.S.C. § 924(e)(l)(A)(i).[1]
The judge failed to inform Sevilla that Count Two carried the possibility of a life sentence. See United States v. Ortiz-Garcia, 665 F.3d 279, 282 n. 2, 285 (1st Cir.2011) (explaining that the maximum penalty for an offense under 18 U.S.C. § 924(c)(1)(A) is life imprisonment and is derived from case law).[2] However, he did draw Sevilla’s attention to the penalties *314 mentioned in the plea agreement, which correctly stated that the maximum penalty for Count Two was life imprisonment, and Sevilla said he understood. The judge also neglected to tell Sevilla that he did not qualify for probation, a suspended sentence, or parole.[3]
B. Pitufo Enters the Scene
The U.S. Probation Office filed Sevilla’s pre-sentence investigation report on November 18, 2011. It applied a four-level leadership enhancement, rather than the two levels agreed upon by the parties, bumping Sevilla’s total offense level up to 31. Based on Sevilla’s five prior convictions — including two violent felonies — it also labeled Sevilla a career offender and set his criminal-history category at VI.[4]
Shortly thereafter, Sevilla filed objections to the presentence report as well as a memorandum disputing the augmented leadership enhancement and his designation as a career offender. The Probation Office followed up with an addendum standing by its recommendations.
Then, on January 13, 2012, the Probation Office dropped a bombshell on the proceedings. In a second addendum to the presentence report, the Office alleged for the first time that Sevilla had murdered José Manuel Torres-Morales, a.k.a. “Pitufo” (or, in English, “Smurf’), in front of the federal courthouse in Hato Rey, Puerto Rico, on November 9, 2007. Pitufo was a fellow drug-ring member who was then under federal supervision. The brazen murder of a federal supervisee outside the courthouse rocked the Puerto Rican legal community to its core.
No one has ever been charged with this notorious murder. The Probation Office learned of Sevilla’s alleged involvement from a cooperating witness, Carlos Manuel Burgos Rodriguez (“Burgos”), also a fellow drug-ring member, who claimed that Sevilla admitted to killing Pitufo.[5] After reading the allegations in the second addendum, the district judge ordered the government to produce Burgos at Sevilla’s sentencing hearing. Sevilla did not object *315 to this order, did not argue the judge could not consider the Pitufo information, and did not ask for a continuation of the hearing.
C. The First Sentencing Hearing
Sevilla’s first sentencing hearing took place on January 25, 2012. Burgos took the stand to testify about Sevilla’s alleged role in the Pitufo murder. He was questioned by the government and cross-examined by defense counsel. Notably, defense counsel did not argue that Burgos’s testimony was impermissible and instead objected only on the basis that she needed more time to prepare. The district judge denied the objection because the second addendum to the pre-sentence report, filed twelve days prior, provided sufficient notice, and because counsel had not sought a continuance before the hearing. Sevilla subsequently testified on his own behalf, disclaiming any involvement in the Pitufo murder and challenging the trustworthiness of Burgos’s testimony.
At the hearing’s conclusion, the judge made several findings. First, considering Sevilla’s serious criminal past (especially his prior violent felony convictions), the judge confirmed Sevilla’s designation as a career offender who belonged in criminal-history category VI.[6] Then, considering Burgos’s testimony about Sevilla’s alleged role in the Pitufo murder, as well as Sevil-la’s testimony denying any involvement, the judge found that the career-offender and criminal-history-category-VT labels underrated the seriousness of Sevilla’s criminal past.[7] Accordingly, the judge departed upward to offense level 38, which is accompanied by a Guidelines sentence range of 360 months to life. Given the depraved nature and devastating impact of Sevilla’s offenses, the judge determined that the highest available sentence was appropriate. Consequently, he sentenced Sevilla to life imprisonment.
The following day, the judge issued an order apportioning Sevilla’s sentence into 327 months on Count One and life imprisonment on Count Two, to run consecutively.[8] Judgment entered against Sevilla on January 26.
*316 D. Subsequent Proceedings
A few days later, on February 1, 2012, Sevilla moved to set aside the judgment and to correct, reduce, and reconsider his sentence, citing Federal Rule of Criminal Procedure 35(a) (“Rule 35(a)”).[9] Sevilla said the district judge had erred at the sentencing hearing by considering the Pi-tufo murder where (1) that crime had not been included in the indictment, and (2) according to Sevilla, defense counsel had not been given adequate time to prepare to refute the allegations before the hearing.
Soon after filing, Sevilla’s lawyer fell ill and had to undergo emergency surgery. As a result, the district judge could not hold a hearing on Sevilla’s motion before Rule 35(a)’s strict fourteen-day deadline expired.
However, on February 8, one day before the fourteen-day buzzer sounded, the district judge sua sponte issued an order purporting to correct Sevilla’s sentence under Rule 35(a) on different grounds. The order sought to rectify two alleged sentencing mistakes. First, the judge said he had intended to sentence Sevilla to 960 months on Count One, followed by life imprisonment on Count Two, but he had erroneously entered only 327 months on Count One. Second, the judge pointed out that the sentence imposed on Count Two was defective under Federal Rule of Criminal Procedure 11 (“Rule 11”) because he had not informed Sevilla during the plea colloquy that Count Two carried a maximum penalty of life imprisonment. To correct these errors, the judge upped Sev-illa’s sentence to 960 months on Count One and reduced it to 60 months on Count Two, to run consecutively for a total of 1020 months (85 years). Amended judgment entered on February 8, 2012.
In the same order, the judge scheduled a hearing a few days later to consider Sevilla’s unresolved Rule 35(a) motion from February 1. That hearing was subsequently postponed to February 22 at defense counsel’s request.
On February 22, the day of the hearing, Sevilla filed a second motion requesting (1) recusal of the district judge due to bias and personal knowledge; (2) a Santobello hearing to determine whether the government had breached the plea agreement;[10] and (3) vacation of the February 8 judgment because Rule 11 errors at the change-of-plea hearing could not be corrected in a Rule 35(a) order. The motion also highlighted a litany of supposed Rule 11 violations in the plea colloquy beyond the judge’s admitted failure to advise Sev-illa of Count Two’s maximum penalty.[11] *317 Chief among them was that the judge had neglected to inform Sevilla that parole had been abolished from the federal penal system. Sevilla maintained that these additional alleged errors could “only be corrected by an appeal and remand, or by allowing [Sevilla] to withdraw his plea,” and not by the district judge issuing an order under Rule 35(a).[12]
At the hearing that day, the district judge considered both Sevilla’s February 1 and February 22 motions.[13] Afterwards, the judge issued another order under Rule 35(a) — this time purporting to set aside both the original guilty plea and the February 8 amended sentence to remedy his failure at the colloquy to inform Sevilla about the maximum penalty on Count Two and the impossibility of parole.[14] The judge noted, however, that the plea agreement still stood, and said he would schedule a new change-of-plea hearing after he issued a separate written ruling denying Sevilla’s recusal and Santobello requests.
Later that day, Sevilla filed a notice of appeal from both the amended judgment of February 8 and the February 22 order intended to set aside that judgment.
On February 28, while that appeal was pending, the district judge issued the promised written order denying Sevilla’s recusal and Santobello requests. The judge then scheduled a supplemental plea *318 colloquy and resentencing hearing for March 8. He further announced he would not consider the Pitufo murder at the re-sentencing hearing, as Sevilla had requested in his February 1 motion. To explain his decision, the judge cited such factors as the timing and seriousness of the accusation, the fact that Sevilla had never been charged with that crime, and the judge’s own concerns for justice, fairness, and due process.
On March 3, Sevilla moved to vacate the judge’s order scheduling the supplemental plea colloquy and resentencing hearing, arguing that the judge had no authority to conduct the colloquy or to further modify his sentence because Rule 35(a) was not an appropriate vehicle for correcting Rule 11 errors.
Thereafter, on March 5, we issued an order deferring our consideration of Sevil-la’s appeal until after the newly scheduled plea and resentencing proceedings, so that any subsequent appeal could be consolidated with the pending appeal.
On March 6, the district judge denied Sevilla’s motion to vacate his order scheduling the supplemental plea and resentenc-ing hearings.[15] Then, on March 8, over Sevilla’s objection that a full colloquy was required, the district judge conducted a truncated supplemental plea colloquy to ensure Sevilla understood that the maximum possible penalty for Count Two, specifically, was life imprisonment, and that he was ineligible for parole, probation, or a suspended sentence. Although defense counsel requested an entirely new colloquy, the judge did not conduct one because he thought there was “no point in repeating” what had already been said. Instead, the judge advised Sevilla of the information missing from the initial colloquy and asked if Sevilla wanted to abide by the plea agreement. Sevilla said yes.[16]
Four days later, on March 12, the judge held Sevilla’s resentencing hearing. Even without considering the Pitufo murder, given Sevilla’s extensive criminal history, the judge again applied the career-offender guideline and varied upward. The judge sentenced Sevilla to 345 months on Count One and 60 months on Count Two, to run consecutively for a total of 405 months (33 years and 9 months). Judgment entered on March 13, 2012.
On March 27, Sevilla filed an amended notice of appeal, challenging (1) all three judgments (January 26, February 8, and March 13); (2) the February 22 order purporting to vacate the February 8 judgment; and (3) the February 28 order denying his recusal and Santobello requests.
DISCUSSION
Sevilla raises a panoply of issues on appeal. He claims that (1) the district judge lacked authority to issue the February 8 amended judgment, as well as authority to take all subsequent actions; (2) both the initial and supplemental plea proceedings were defective; (3) the final sen *319 tence was unreasonable; and (4) the judge erred in rejecting his recusal and Santo-bello requests. The government counters that the appeal waiver in the plea agreement bars this challenge. But we bypass this issue because Sevilla’s claims, if successful, could invalidate both the plea itself and the waiver of his right to appeal.[17] And so we forge ahead with the merits of Sevilla’s appeal.
A. The District Judge’s Authority
1. Rule 35(a)
Sevilla first argues that Rule 35(a) did not empower the district judge to issue the February 8 judgment, which modified the original January 26 judgment by boosting Sevilla’s sentence from 327 months to 960 months on Count One and cutting his sentence from life imprisonment to 60 months on Count Two. Consequently, Sevilla says, the February 8 judgment (and all of the judge’s subsequent actions) was null and void.
On appeal, the government concedes that Rule 35(a) did not authorize the district judge’s actions on February 8. No matter, the government says — the judge derived his power to take subsequent action from 28 U.S.C. § 2255, a habeas corpus provision.[18] But before we tackle the government’s fallback habeas position, we explain why we agree that Rule 35(a) did not empower the judge to act on February 8.
We review issues of law, including the district judge’s interpretation of a Federal Rule of Criminal Procedure, de novo. United States v. Leja, 448 F.3d 86, 92 (1st Cir.2006) (citing United States v. Encarnacion, 239 F.3d 395, 397 (1st Cir.2001)).
Rule 35(a) empowers a district judge to “correct a sentence that resulted from arithmetical, technical, or other clear error” within fourteen days after sentencing. Fed.R.Crim.P. 35(a). The function of Rule 35(a) is narrowly circumscribed: It “permitís] correction ... of an illegal sentence.” Hill v. United States, 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). For Rule 35(a) purposes, a sentence is illegal if “[t]he punishment meted out was ... in excess of that prescribed by relevant statutes, multiple terms were ... imposed for the same offense, ... [or] the terms of the sentence itself [were] legally or constitutionally invalid in any respect.” Id. Rule 35(a) does not, on the other hand, enable a judge to fix errors committed at trial or during proceedings prior to the imposition of sentence. Id. As such, Rule 35(a) does not provide a means to revisit possible errors in the plea colloquy. See United States v. Vinyard, 539 F.3d 589, 594 (7th Cir.2008) (finding Rule 35(a) was not an appropriate vehicle for addressing *320 possible Rule 11(b)(1)(H) violation in plea colloquy).
When vacating the January 26 sentence and imposing an amended sentence on February 8, the district judge invoked Rule 35(a) to correct two purported errors: (1) the judge’s self-professed mistaken entry of a sentence of 327 months, rather than 960 months, on Count One; and (2) the judge’s failure to inform Sevilla during the plea colloquy that Count Two carried a maximum penalty of life imprisonment. Because neither of these alleged infirmities resulted in an illegal sentence, Rule 35(a) by its terms does not provide a cure for either.
First, the 327-month sentence that the judge says he entered mistakenly on Count One was not “illegal” in the sights of Rule 35(a). It was not in excess of statutory limits. See 21 U.S.C. §§ 841(b)(1)(h), 860 (setting the maximum penalty at eighty years, or 960 months). It did not impose multiple terms for the same offense. See Hill, 368 U.S. at 430, 82 S.Ct. 468. And no one has argued it was otherwise legally or constitutionally invalid. See id.
Second, the Rule 11 defect diagnosed by the judge in the plea colloquy— namely, the judge’s failure to tell Sevilla that Count Two was punishable by life imprisonment — occurred before sentencing and, thus, is not a sentencing error. It is therefore decidedly outside the bounds of the type of glitch that Rule 35(a) is designed to mend. See id.; Vinyard, 539 F.3d at 594.
Accordingly, like the parties, we conclude that the district judge could not rely on Rule 35(a) for authority to issue the February 8 judgment aiming to remedy mistakes he spotted in the January 26 judgment.
2. Section 2255
The question, then, is whether 28 U.S.C. § 2255 gave the judge power to act on or after February 8.[19]
Before us, the government argues for the first time that Sevilla’s February 22 motion- — requesting recusal, a Santobel-lo hearing, and vacation of the February 8 judgment for lack of authority, as well as alleging a string of Rule 11 errors in the plea colloquy — authorized the judge’s actions on or after February 8 because the motion functioned as a collateral attack on Sevilla’s conviction and sentence under § 2255. Sevilla did not caption the motion under any particular rule or statute, but simply dubbed it an “omnibus motion regarding sentencing.” And the district judge clearly viewed it as another Rule 35(a) motion.[20] Nonetheless, because “a motion’s character depends upon its substance, not its appellation,” United States v. Ortiz, 741 F.3d 288, 291 (1st Cir.2014), the government says we can and should treat the February 22 motion as a § 2255 challenge based on its content, even though it does not wear a § 2255 label.
*321 We begin with a brief § 2255 primer. Section 2255 appears in the chapter devoted to habeas corpus and gives a federal prisoner a means to collaterally attack his sentence. 28 U.S.C. § 2255(a). Specifically, it permits a prisoner to move the court that imposed his sentence “to vacate, set aside, or correct the sentence” because (1) “the sentence was imposed in violation of the Constitution or laws of the United States,” (2) “the court was without jurisdiction to impose such sentence,” (3) “the sentence was in excess of the maximum authorized by law,” or (4) the sentence “is otherwise subject to collateral attack.” Id.
Notwithstanding this broad language, a § 2255 motion alleging a violation of federal law is generally cognizable only if it involves “a fundamental defect [that] inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.” Hill, 368 U.S. at 428, 82 S.Ct. 468; see also United States v. Vonn, 535 U.S. 55, 63-64, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)). By this standard, § 2255 relief is not available to remedy “a failure to comply with the formal requirements of a rule of criminal procedure,” absent any evidence of prejudice or other injury to the defendant. See Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (internal quotation marks and citation omitted). In particular, a defendant will “ ‘rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255,’ ” United States v. Borrero-Acevedo, 533 F.3d 11, 17 (1st Cir.2008) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 n. 9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)), because such errors seldom result in the type of “complete miscarriage of justice” or proceeding “inconsistent with the rudimentary demands of fair procedure” that deserves redress under the statute, see Timmreck, 441 U.S. at 784, 99 S.Ct. 2085 (finding the court’s failure to inform defendant of special parole term, in violation of Rule 11, was not a fundamental defect).
Moreover, a defendant usually gets only “one complete round of collateral review” under § 2255. Melton v. United States, 359 F.3d 855, 857 (7th Cir.2004); see Munoz v. United States, 331 F.3d 151, 153 (1st Cir.2003) (per curiam). Second or successive § 2255 motions are severely limited and require certification by the appropriate court of appeals. 28 U.S.C. § 2255(h); see Castro v. United States, 540 U.S. 375, 377, 382, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003); Munoz, 331 F.3d at 153. Accordingly, though we may choose to recharacterize a motion styled otherwise as falling under § 2255 based on its content, Trenkler v. United States, 536 F.3d 85, 97 (1st Cir.2008) (compiling cases), we must be mindful that doing so may deprive a defendant of his chance to bring a second, possibly stronger claim under that statute, see Castro, 540 U.S. at 377, 382, 124 S.Ct. 786; id. at 387, 124 S.Ct. 786 (Scalia, J., concurring).[21]
*322 Against this backdrop, we choose not to recast Sevilla’s February 22 motion in a § 2255 mold. No one below — not Sevilla, not the government, and certainly not the district judge — considered the motion under § 2255. Before us, only the government says we should view the motion under § 2255. This was Sevilla’s motion, not the government’s, and the important concerns outlined above counsel against our recharacterizing the motion under that statute.
Accordingly, we find that the February 22 motion — which we view as decided only pursuant to Rule 35(a) — did not provide the judge with authority for his posb-February-8 actions by way of § 2255, and the January 26 order remained the final order of the court.[22] We therefore need not reach Sevilla’s arguments that (1) the supplemental plea colloquy was defective; (2) the final sentence imposed was unreasonable; and (3) the district court erred in not granting Sevilla’s February 22 recusal and Santobello requests. Rather, we now turn to Sevilla’s direct appeal of the January 26 judgment.
B. The Initial Guilty Plea
Most curiously, before us, Sevilla seems to have forgotten what brought him here in the first place. At the February 22 hearing, when the district judge asked Sevilla what he wanted to do about alleged Rule 11 defects in the initial plea colloquy, Sevilla insisted he wanted to address those defects on appeal rather than reopen the plea proceedings. However, he says little in his brief about the impact of Rule 11 errors in the initial colloquy on the first judgment, and instead focuses his attacks on purported errors at the supplemental plea level.
Arguments raised in only a perfunctory and undeveloped manner are deemed waived on appeal. Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir.2011); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990). Sevilla’s entire argument about the effect of Rule 11 errors in the first colloquy on the first judgment is as follows:
Pursuant to this Court’s opinion in [United States v. Ortiz-Garcia, 665 F.3d 279, 287-89 (1st Cir.2011),] the District Court’s failure to inform [Sevilla] at the change of plea hearing that the maximum sentence for [Count Two] was life imprisonment instead of the 5 years mentioned mandates setting aside the final judgment entered on [January 26], where a life sentence was imposed on [Count Two].... The Change of Plea transcript does not inform him of a maximum time of life imprisonment and [it] is by no means clear he would have *323 [pleaded] guilty under those circumstances. The case should be remanded for resentencing before a different District Court judge. (Emphasis added.)
Though Sevilla has identified an error and a possible argument — that he might not have pleaded guilty but for the error — he has done so only “in the most skeletal way, leaving the court to do counsel’s work, create the ossature for the argument, and put flesh on its bones.” Zannino, 895 F.2d at 17. This we will not do. Id.
As a result, Sevilla’s Rule 11 claims are not merely forfeited and subject to plain error review — as they would be because Sevilla did not object on Rule 11 grounds during the initial colloquy or move to withdraw his plea in the district court.[23] See United States v. Anderson, 745 F.3d 593, 598 (1st Cir.2014); United States v. Ortiz-Garcia, 665 F.3d 279, 285 (1st Cir.2011) (reviewing underlying Rule 11 claim for plain error because defendant failed to object to the error or move to withdraw his plea in the district court); Igartúa v. United States, 626 F.3d 592, 603 (1st Cir.2010) (“[Ajrguments that are not raised in a timely manner are forfeited,” and “[pjlain error review may be available for forfeited arguments.”). Rather, because Sevilla did not adequately challenge these errors on appeal, his Rule 11 claims are waived entirely. See Anderson, 745 F.3d at 598; Igartúa, 626 F.3d at 603 (explaining that plain error review “is seldom available for claims neither raised below nor on appeal”).
Though we may, on rare occasion, exercise our discretion to address waived arguments — for instance, when they become available only as a result of intervening changes in law — we see no reason to do so here. See Anderson, 745 F.3d at 598; Igartúa, 626 F.3d at 603 (“Review is unavailable for waived arguments unless the court engages in the rare exercise of its power to excuse waiver.” (internal quotation marks and citation omitted)). Furthermore, even if we did exercise our discretion to hear Sevilla’s Rule 11 claims, they would not survive the high hurdle of plain error review. See Anderson, 745 F.3d at 598 (citing United States v. Padilla, 415 F.3d 211, 218-19 (1st Cir.2005) (en banc)).[24] Thus, we turn to Sevilla’s first sentence.
*324 C. First Sentence
It also appears to have slipped Sevilla’s mind to challenge his first sentence — 327 months on Count One, followed by a consecutive term of life imprisonment on Count Two — on appeal. In his brief, he mainly focuses on the alleged unreasonableness of the third sentence he received- — 345 months on Count One and 60 months on Count Two, to run consecutively for a total of 405 months (33 years and 9 months). But because Sevilla does make some argument regarding one aspect of the first sentence — namely, the district judge’s consideration of the Pitufo murder at the first sentencing hearing — we will not deem this particular argument waived.[25] Cf. Anderson, 745 F.3d at 598.
We review for abuse of discretion a district judge’s decision to consider particular information at sentencing. United States v. Greig, 717 F.3d 212, 217-18 (1st Cir.2013). By statute, “[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person ... which a [judge] ... may receive ... for the purpose of imposing an appropriate sentence.” 18 U.S.C. § 3661. Moreover, a sentencing judge is affirmatively required to consider “the history and characteristics of the defendant.” 18 U.S.C. § 3553(a)(1). And the sentencing judge has discretion to judicially find facts informing the sentence based upon a preponderance of the evidence, “provided that any such fact does not trigger a mandatory minimum punishment or alter a statutory maximum, and that the ultimate sentence remains within the range of penalties set forth in the statute of conviction.” United States v. Doe, 741 F.3d 217, 234 (1st Cir.2013).
Information about the Pitufo murder — as it was relevant to Sevilla’s background, character, conduct, history, and characteristics — is precisely the type of evidence that the sentencing judge is authorized by statute to consider. See 18 U.S.C. §§ 3553(a)(1), 3661. Furthermore, it was within the judge’s discretion to find facts about the Pitufo murder by a preponderance of the evidence at sentencing, as the judge’s consideration of that murder did not modify the mandatory mínimums or *325 statutory máximums applicable to Sevilla, or result in a sentence beyond the range of penalties specified in the statutes of conviction. Sevilla does not argue otherwise before us now.
Accordingly, the judge did not abuse his discretion by considering the Pitufo murder information at Sevilla’s first sentencing hearing.[26] As a result, Sevilla’s first sentence — 327 months on Count One plus a consecutive term of life imprisonment on Count Two — stands.
PARTING WORDS
We acknowledge that our result may seem harsh. Where Sevilla once faced 405 months’ imprisonment, now he must grapple with a life sentence. But Sevilla chose to proceed with this appeal knowing he risked a higher sentence.
At oral argument, we explicitly asked Sevilla’s counsel if Sevilla understood that this appeal could subject him to a sentence based on consideration of his alleged involvement in the Pitufo murder and longer than the 405-month term ultimately imposed by the district judge. We sought confirmation that Sevilla wished to appeal anyway. On the spot, counsel asserted that Sevilla understood these risks, but he agreed to call Sevilla to confirm.
A few days later, counsel filed an unresponsive motion that did not address whether Sevilla understood the risks he faced by seeking vacation of the third and most favorable 405-month sentence. We then entered a Written order again instructing counsel to inquire whether Sevil-la wished to pursue the appeal even though “re-sentencing in this matter presented the risk to [Sevilla] of receiving a sentence greater than his current sentence of 405 months and up to life imprisonment, particularly if the district court were to consider either [Sevilla’s] alleged involvement in the ‘Pitufo’ murder or calculate a base sentencing level and make appropriate upward departures.” (Emphasis in original.) Counsel filed a second motion saying he had explained those risks to Sevilla and Sevilla still wished to proceed.
While our order focused on the risk of a life sentence upon re-sentencing before the district court, the propriety of a life sentence was clearly before us in this appeal. And because we expressly warned Sevilla that a life sentence remained on the table, though the outcome we reach is not what Sevilla hoped for, at least it should come as no surprise.
CONCLUSION
With our work finished, we affirm the initial guilty plea and the original January 26 sentence of 327 months on Count One and a consecutive term of life imprisonment on Count Two. We vacate all subsequent judgments and orders of the district court.

. After setting out the mandatory minimum and statutory maximum penalties on Count One, the judge (somewhat unclearly) told Sev-illa he also had "a consecutive term of imprisonment of I think it’s five years on account of the firearms.” Then, when explaining the Guidelines range that applied to Sevilla under the plea agreement, the judge stated the range for Count One, “plus 60 months mandatory” on Count Two.

. This court did not explicitly recognize that 18 U.S.C. § 924(c)(1)(A) had a maximum penalty of life imprisonment until we decided Ortiz-Garcia in December 2011 — several months after Sevilla's August 2011 plea colloquy. 665 F.3d at 285-86. However, we explained there that when Ortiz-Garcia pleaded guilty — in June 2010 — the district judge in his case should and did already know the maximum penalty under the statute; he simply forgot to state it at the change-of-plea hearing. Id. at 282, 285-86. It appears the same thing happened here, where, as the judge later candidly admitted, he mistakenly missed *314 stating the maximum penalty while taking Sevilla's plea.

. Federal Rule of Criminal Procedure 11 ("Rule 11”) requires a district judge to address a defendant in open court before accepting a guilty plea in order to ensure the defendant understands the consequences of his plea. Fed.R.Crim.P. 11(b)(1). Among other things, as part of this colloquy, the judge must inform the defendant of "any maximum possible penalty” before accepting the plea. Fed.R.Crim.P. 11(b)(1)(H). The rule does not require the judge to tell the defendant about eligibility for probation, a suspended sentence, or parole. See Fed. R.Crim.P. 11(b)(1).

. Sevilla committed the two most violent offenses roughly one month apart in 1996. First, on May 25, Sevilla and others fired shots at a car carrying three individuals. Sevilla was arrested and charged with attempted murder, among other things. Then, on July 10, while out on state bond, Sevilla again fired shots at a vehicle. This time the car belonged to the state witness protection program. Inside were two police officers and four civilians, including an infant. Only one person was hurt. Sevilla was charged with six more counts of attempted murder and several weapons offenses. He pleaded guilty to both sets of charges on May 7, 1997, and was subsequently sentenced to twelve years for the first shooting and eight years for the second shooting, to run concurrently.

.Burgos first mentioned Sevilla's involvement in the Pitufo murder briefly during his testimony before a grand jury. Sevilla suspects the government played some part in notifying the probation officer of this testimony, which led the officer to interview Burgos and to amend Sevilla’s pre-sentence investigation report with the Pitufo murder information. But it is unclear from the record how the probation officer in fact learned of Bur-gos's statements.

. The judge stressed that Sevilla's past convictions were not for so-called "Mickey Mouse” or “heartland” crimes, but rather were "a string of amazing convictions which include crimes of violence” like "[s]hooting at vehicles" and "[firying to kill witnesses in a witness protection program while ... released on bail from the other major case of attempted murder.”

. Throughout the hearing, the district judge— who had been chief judge of the federal courthouse when Pitufo was killed — expressed his outrage and dismay at the havoc the murder had wreaked on the court system. For example, he said:
The murder stopped the operation of this court. The murder not only stopped the operation of this court for almost a whole day, it was a disaster what happened here. The FBI had to take control of the building. We didn't know where this was coming from. Can you imagine, allowing somebody to use the perimeter of this court to kill supervisees? Imagine getting involved to the point that you're basically interfering with the legitimate governmental function of administering justice. Can you imagine that? They killed him right in front of the courthouse. Right in front of the courthouse .... It was a horrible thing.

.At the January 25 hearing, the judge had said:
I am sentencing the defendant to life imprisonment, and that will include of course the consecutive sentence that had to be imposed on the firearms, because it would be ridiculous to impose a life term plus five years. That doesn’t make any sense.
The dissent says this “strongly suggests that Sevilla was sentenced to life imprisonment on Count 1,” i.e., above the 80-year statutory maximum, “and a five-year term on Count 2.” But on January 26, the judge offered an alternative explanation: On January 25, he had *316 intended "to look at the two counts together and, after making the corresponding departures, sentence the [d]efendant to life imprisonment.” Then, realizing that he should have apportioned the sentence between the counts, see United States v. Zavala-Marti, 715 F.3d 44, 51 n. 6 (1st Cir.2013) (explaining that "the proper procedure is to render a separate sentence on each count” (internal quotation marks and citation omitted)), on January 26 he divided the total life sentence imposed on January 25 among Counts One and Two. Sev-illa has not challenged the judge's authority to apportion the sentence and treats the January 25 and January 26 sentences as one sentence.

.Rule 35(a) permits a district judge to correct a sentence within fourteen days after sentencing if it "resulted from arithmetical, technical, or other clear error.” Fed. R.Crim.P. 35(a). More on this later.

. For those not in the know, Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), stands for the proposition that prosecutors must abide by their plea agreements.

. Specifically, Sevilla claimed the judge had violated Rule 11 when he failed to:
1) inquire as to whether [Sevilla] had the plea agreement translated to him word for word;
*317 2) ask ... whether [defense counsel] had translated the plea agreement [for Sevil-la];
3) ask whether [Sevilla] was aware that he had the right to summon witnesses living beyond the jurisdiction of Puerto Rico pursuant to Rule 17;
4) ask whether [Sevilla] was aware that he had the right to assist his attorney to select a jury of his peers and to execute peremptory challenges and challenges for cause;
5) ask whether ... Sevilla was aware that parole had been abolished in the federal system;
6) ask whether [Sevilla] fully understood the parameters of the waiver of appeal provision;
7) ask whether [defense counsel] had explained the application of the guidelines to [Sevilla's] case;
8) ask whether [defense counsel] had reviewed discovery with [Sevilla] and whether he had received discovery of the evidence;
9) ask whether [Sevilla] had been told that he had a right to be appointed counsel under the Criminal Justice Act if he could not continue to afford to ... pay a private attorney, if he elected to go to trial.

.In the motion, Sevilla asked for an opportunity to withdraw his plea, but said he would do so only if the judge first made "specific protective findings of fact and conclusions of law,” that, among other things, would require the government to offer him the same plea agreement after withdrawal and would give him time to investigate the Pitufo murder allegations before resentencing. But at the hearing that followed, Sevilla's counsel informed the judge that Sevilla “[did] not want to reopen the hearing,” and instead wanted to file an appeal, as he did later that day.

. As a reminder, unlike the February 22 motion (which criticized the judge’s attempt to invoke Rule 35(a)), the February 1 motion asked the judge to act under Rule 35(a). It claimed the judge had erred by considering the Pitufo murder at sentencing and requested that the judge set aside the original January 26 judgment and correct the original January 26 sentence.

. The judge knew that his failure to warn Sevilla that parole was unavailable was not, by itself, a violation of Rule 11. See Johnson v. United States, 650 F.2d 1, 4 (1st Cir.1981). However, "the very purpose of Rule 11 ... 'is to advise a defendant of the actual consequences of his plea so that he can realistically decide whether to plead guilty.' ” United States v. Rivera-Maldonado, 560 F.3d 16, 20 (1st Cir.2009) (quoting United States v. Santo, 225 F.3d 92, 98 (1st Cir.2000)). And, as the judge explained, his omission regarding parole could have undermined Sevilla’s understanding of the consequences of his plea, even though Rule 11 did not expressly require the judge to discuss it.

. In the March 6 order, the judge explained that “Rule 35(a) and Rule 11 were not the exclusive reasons for setting aside the sentence.” Rather, the judge claimed (for the first time) to have acted also under a grant of common-law authority to reconsider and reduce a sentence upon reflection. See United States v. Benz, 282 U.S. 304, 306-07, 51 S.Ct. 113, 75 L.Ed. 354 (1931). Neither party has made a Benz argument on appeal, and therefore we do not address it.

. We pause to remind the reader that at the initial colloquy, the judge had drawn Sevilla's attention to the penalties mentioned in the plea agreement — which correctly stated that the maximum penalty for Count Two was life imprisonment — and Sevilla told the judge that he understood.

. Ordinarily, a court will consider whether a waiver of appeal is enforceable before proceeding to the merits of the case. See, e.g., United States v. Acosta-Roman, 549 F.3d 1, 3 (1st Cir.2008). This is because "under ordinary circumstances, a knowing, voluntary waiver of the right to appeal from a sentence, contained in a plea agreement, ought to be enforced ... [ajbsent some convincing countervailing argument." United States v. Teeter, 257 F.3d 14, 23 (1st Cir.2001) (footnote omitted). However, a court may opt to go directly to the merits of an appeal where a defendant who has entered a guilty plea and agreed to waive his right to appeal seeks to challenge an aspect of the plea which, " ‘if successful, would invalidate both the plea itself and the waiver of his right to appeal.’ ” See United States v. Chambers, 710 F.3d 23, 27 (1st Cir.2013) (quoting United States v. Santiago Miranda, 654 F.3d 130, 136 (1st Cir.2011)).

. Section 2255 enables a federal prisoner to move the court that imposed his sentence "to vacate, set aside[,] or correct the sentence” based on one of four grounds. 28 U.S.C. § 2255. We’ll discuss this more fully below.

. As a quick recap, the judge's post-February-8 actions were: (1) on February 22, he issued an order intended to set aside the February 8 amended sentence and the original plea due to Rule 11 errors; (2) on February 28, he issued an order denying Sevilla’s recusal and Santobello requests and scheduling a new change-of-plea hearing; (3) on March 8, he conducted a supplemental plea colloquy; and (4) on March 12, he re-sentenced Sevilla.

. The February 22 order responding, in part, to the February 22 motion, explicitly states: "Sentence vacated under Fed.R.Crim.P. 35(a), correcting for clear error emanating from the defective plea colloquy.”

. This risk prompted the Supreme Court to limit the courts’ recharacterization powers with respect to pro se litigants (who, presumably, are less aware of the consequences of recharacterization than those with counsel) in the following way:
[T]he court cannot ... recharacterize a pro se litigant’s motion as the litigant’s first § 2255 motion unless the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's "second or successive” restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing.
Castro, 540 U.S. at 377, 383, 124 S.Ct. 786 (emphasis in original).

. Sevilla argued the district judge lost power to act in his case after he filed his first notice of appeal on February 22 challenging both the February 8 amended sentence and the February 22 order purporting to vacate that sentence (though it was not until March 27 that he amended his appeal to include challenges to the original judgment and subsequent orders and judgments). "As a general rule, with only limited exceptions, entry of a notice of appeal divests the district [judge] of jurisdiction to adjudicate any matters related to an appeal.” United States v. Martin, 520 F.3d 87, 97 (1st Cir.2008) (internal quotation marks and brackets omitted) (quoting United States v. Distasio, 820 F.2d 20, 23 (1st Cir.1987)). "This rule applies with equal force to sentencing.” Distasio, 820 F.2d at 23. Thus, Sevilla says, his notice of appeal suspended the judge's power to modify his sentence, and all the judge's later actions were null and void. Sevilla does not explain how his later-in-time February 22 notice of appeal could have divested the judge of jurisdiction for the earlier-in-time February 22 order. But because we find the judge lacked authority pursuant to Rule 35(a) for his post-February-8 actions anyway, we need not spin our wheels trying to pin down Sevilla’s argument on this point.

. The dissent says "Sevilla had no reasonable opportunity to discover and raise the Rule 11 error during the sentencing hearing, prior to the sentence’s imposition” because the life term on Count Two was not imposed in writing until January 26, 2012 — the day after the sentencing hearing. However, this overlooks Sevilla's failure to object at the plea colloquy on August 9, 2011 — when the error occurred — or anytime thereafter before the sentence was imposed. Though Sevilla did eventually raise Rule 11 issues before the district court and move to withdraw his plea, it was not until his February 22, 2012 motion — ■ after sentence had been imposed and after the district judge had sua sponte recognized and attempted to correct the Rule 11 error (though he lacked power to do so under Rule 35). And when the judge asked Sevilla at the hearing on that motion if indeed he wanted to reopen the hearing, Sevilla’s counsel responded that while Sevilla wanted to ”stand[] by all his arguments in the [February 22 motion]," he "[did] not want to reopen the hearing,” and instead wanted to file an appeal, as he did later that day. Accordingly, were Sevil-la’s Rule 11 claims not waived before us, they would at least be forfeited.

. To demonstrate plain error, Sevilla would need to show that "(1) [a Rule 11] error occurred; (2) the error was plain; (3) the error affected the defendant’s substantial rights; and (4) the error 'seriously affected the fairness, integrity or public reputation of judicial proceedings.' ” Ortiz-Garcia, 665 F.3d at 285 (brackets omitted) (quoting Rivera-Maldonado, 560 F.3d at 19). To satisfy the third prong, Sevilla must demonstrate there is " 'a reasonable probability that, but for the error, he would not have entered the plea.' ” Id. at 286 (quoting Dominguez Benitez, 542 U.S. at 76, 124 S.Ct. 2333).
*324 Assuming the judge plainly erred by failing to advise Sevilla that Count Two carried the possibility of a life sentence, see Fed. R.Crim.P. 11(b)(1)(H), Sevilla nevertheless cannot satisfy the third prong of the plain error test. To succeed, Sevilla would have to demonstrate that, if the judge had informed him of Count Two’s maximum penalty, there is a reasonable probability he would not have pleaded guilty. But the plea agreement Sevilla signed explicitly stated the correct maximum penalty, and he assured the judge during the colloquy that he understood the maximum penalties listed in that agreement. Cf. Ortiz-Garcia, 665 F.3d at 285, 288 (finding a reasonable probability that defendant would not have entered guilty plea but for Rule 11 error where plea agreement did not include maximum penalty and court did not mention maximum penalty at change-of-plea hearing). So Sevilla cannot meet the third prong, and the judge’s failure to warn Sevilla of Count Two's maximum penalty was not plain error.
As for the other alleged Rule 11 violation— the judge’s failure to warn Sevilla he was ineligible for parole — Rule 11 does not require a judge to inform a defendant of his parole ineligibility. See Johnson v. United States, 650 F.2d 1, 4 (1st Cir.1981). Thus, this omission was not error — plain or otherwise.

. In the section of his brief urging the district judge’s recusal, Sevilla claims it was wrong for the judge to consider the Pitufo murder during the first sentencing hearing. However, Sevilla does not reprise his second argument pertaining to the first sentencing from his February 1 motion that defense counsel had not been given adequate time to prepare to refute the Pitufo murder allegations before the first sentencing hearing. Thus, that argument is waived. See Anderson, 745 F.3d at 598.

. The judge's proper consideration of the Pitufo murder, standing alone, also was not evidence of bias warranting the judge's disqualification. Therefore, Sevilla’s argument that the judge abused his discretion by refusing to disqualify himself, to the extent it relies on the judge’s consideration of this information, fails. See United States v. Snyder, 235 F.3d 42, 46 (1st Cir.2000) (explaining that we apply an abuse of discretion standard when a trial judge refuses to recuse himself). Furthermore, it was proper for the judge to take into account the Pitufo murder’s impact on the community during sentencing. See United States v. Politano, 522 F.3d 69, 74-75 (1st Cir.2008) (explaining that the sentencing judge is permitted to consider the characteristics of the community in which a defendant's conduct arose and the conduct’s impact on the community). Thus the judge likewise did not abuse his discretion by refusing to disqualify himself on that basis.