In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3186

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MOSHOODI EMIOLA AJIJOLA,
also known as HAMSAT AYINDE,
also known as MONSHU,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:06-cr-00682-9–**Samuel Der-Yeghiayan,** *Judge.*

ARGUED SEPTEMBER 24, 2009—DECIDED OCTOBER 21, 2009

Before BAUER, KANNE and EVANS, *Circuit Judges*.

BAUER, *Circuit Judge*. A jury convicted Moshoodi Emiola Ajijola of conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 2; and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Ajijola challenges his conviction, claiming the district court erred in permitting improper evi-

dence and argument at trial, and, in the alternative, claiming that the district court erred in rejecting his guilty plea. We affirm.

## I. BACKGROUND

Prior to trial, the government filed a motion seeking to introduce evidence that Ajijola attempted to flee, bare-footed and half-dressed, from law enforcement on September 21, 2006, the date of his arrest. Although objecting to other pre-trial government filings, Ajijola did not object to this motion. The district court granted the government's motion, ruling that Ajijola's flight from police was evidence of consciousness of guilt.

On the day of trial, Ajijola informed the district court that he and the government had reached a plea agreement, whereby the government would drop one of the two counts against him, in exchange for his pleading guilty to the other count. Before accepting the plea, the district court directed Ajijola to explain, in his own words, to what conduct he was pleading guilty. During this colloquy, the district court asked Ajijola whether he had done "what the government says," Ajijola stated, "I didn't do it." Tr. 43.[1] The district court thereupon rejected the plea and the case proceeded to a jury trial.

At trial, Letisha Kyles, who was at Ajijola's apartment at the time of his arrest, testified that Ajijola was in the

---

[1] References to the transcript from the Federal Rule of Criminal Procedure 11 ("Rule 11") colloquy are designated as "Tr."

bathroom and on the telephone when the law officers entered the apartment, and that she heard "water running" from the bathroom. During closing argument, the government argued that the evidence could allow the jury to infer that Ajijola received a "warning call," which caused him to "flush" whatever he had down the toilet, and then he tried to flee from the officers. At no time did defense counsel object to any of this argument.

On appeal, Ajijola argues that the evidence of flight was improperly admitted and that the government made improper remarks during closing argument, thereby entitling him to a new trial. In the alternative, Ajijola argues that the district court abused its discretion in refusing to accept his guilty plea.

## II. DISCUSSION

### A. Flight Evidence and the Government's Arguments

Ajijola failed to object to the pre-trial motion to introduce evidence of his flight from law enforcement. Likewise, Ajijola did not object during closing argument when the government asserted that hearing "running water" in the bathroom is synonymous to hearing "flushing." So we review the admission of the flight evidence and the assertions made by the government for plain error. *United States v. Schalk,* 515 F.3d 768, 776 (7th Cir. 2008); *United States v. Johnson,* 437 F.3d 665, 671 (7th Cir. 2006). Under the plain error standard, the party asserting the error must establish (1) that there was in fact an error; (2) that the error was plain; and (3) that the error "affects

substantial rights." *U.S. v. Van Allen*, 524 F.3d 814, 819 (7th Cir. 2008) (citations omitted). Moreover, we will not consider the error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citations omitted).

Ajijola argues that it was plain error to admit the flight evidence because the attempt to escape from police occurred "more than three months after the relevant conduct" and there was a compelling alternative explanation for his flight, i.e., he was not legally in the United States on the date of his arrest.[2] Further, Ajijola asserts that there was no evidence that he believed he was being pursued for the acts charged in the indictment.

In support of this argument, Ajijola cites to *United States v. Jackson*, 572 F.2d 636 (7th Cir. 1978), where this Court held that evidence of flight should have been excluded because three and one-half months had elapsed between the time that the defendant committed the crime charged and his flight from authorities. *Jackson* held that the more remote in time the flight is from the commission or accusation of an offense, the greater the likelihood that the flight was the result of something other than a sense of guilt concerning that offense. *Id.* at 641. Conversely, the importance of the immediacy factor is greatly diminished, if not rendered irrelevant, when there is evidence that

---

[2] Ajijola concedes that the indictment states that the conspiracy continued "until on or about September 21, 2006" but contends that the government offered no evidence that the conspiracy existed for three months prior to his flight.

the defendant knows that he is accused of and sought for the commission of the crime charged. *Id.* Accordingly, *Jackson* concluded that when a defendant's flight occurs a substantial time after the crime, "we will place significance on a defendant's knowledge that he is accused of or sought for the crime charged." *Id.*

The government counters that the conspiracy in which Ajijola was charged occurred from the late summer 2003 through the date of his arrest. And, co-defendant Chief Nuamah ("Chief") testified at trial that co-conspirator James U. Nduribe ("Rasta") (who was never apprehended) telephoned Ajijola on the morning of Ajijola's arrest to tell him that police were looking for Chief and Rasta. Therefore, the government maintains that at a minimum, on the morning of his arrest, Ajijola knew that law enforcement was looking for two of his co-conspirators. In addition, there was testimony at trial that police were, in fact, looking for Ajijola on the date of his arrest. Nor did Ajijola present any testimony or evidence to support a contention that he was fleeing law enforcement because of his immigration status. The government maintains that the proximity of time between the telephone call and Ajijola's back-door exit from his apartment shows a strong connection between his criminal behavior and the flight and, accordingly, his flight to avoid apprehension supports a strong inference of a consciousness of guilt concerning the crimes charged.

Nor does it appear that the evidence complained of seriously affected the outcome of the case. *Schalk*, 515 F.3d at 777. The government presented evidence that Rasta told

Ajijola that the police were looking for Rasta and Chief on the date of his arrest; hours later when police arrived at his apartment, Ajijola tried to flee from the premises. The flight evidence was admissible to support an inference of consciousness of guilt of the crimes charged. And even if the flight evidence had been excluded, the remaining evidence was sufficient to establish beyond a reasonable doubt that Ajijola was involved in a conspiracy to distribute heroin. We therefore find no error, plain or otherwise.

Nor was it error to allow the government to argue the reasonable inferences during closing argument. There is nothing in the record that would warrant a new trial.

### B.  Guilty Plea

A defendant has no absolute right to have a court accept a guilty plea, and a court may reject such a plea in the exercise of sound judicial discretion. *United States v. Hernandez-Rivas*, 513 F.3d 753, 759 (7th Cir. 2008). We review the district court's rejection of Ajijola's offered guilty plea for an abuse of discretion. *Id.*

The following exchange took place during the Rule 11 colloquy:

> THE COURT: As to Count Ten . . . I want you to tell me in your own words as to what you did.

> THE DEFENDANT: On the 6th—on the 2nd—June 2006, on the 2nd, Rasta asked me for my key to my

house. He said he wanted to store some drugs in there and I give him my key.

THE COURT: The charge against you, sir: It says on or about June 6th, 2006—it would have been a few days earlier, few days later, ten days earlier, ten days later. On or about June 6th. It says you possessed with intent to distribute heroin approximately 417 grams. Did you do so, sir?

THE DEFENDANT: No, your honor.

***

THE COURT: Okay, I'm going to one more time ask you, sir, are you in fact—did you, in fact, do what the government says in Count Ten?

THE DEFENDANT: I didn't do it.

Tr. 40-41, 43.

Ajijola's denials provided sound reasoning for the district court to reject Ajijola's attempted plea; the district court did not abuse its discretion in doing so.

## III.  CONCLUSION

For the reasons stated above, we AFFIRM.