In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1348

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SANTOS BAHENA-NAVARRO,
also known as SANTOS BAHENA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 675—**James F. Holderman**, *Chief Judge.*

ARGUED OCTOBER 31, 2011—DECIDED APRIL 24, 2012

Before KANNE and WILLIAMS, *Circuit Judges*, and
DEGUILIO, *District Judge.**

KANNE, *Circuit Judge.* Following a criminal conviction
in 2001 and again in 2003, Santos Bahena-Navarro, an
illegal immigrant, was deported to Mexico on August 27,

---

* The Honorable Jon E. DeGuilio, United States District Court
for the Northern District of Indiana, sitting by designation.

2004. Undeterred, Bahena-Navarro unlawfully returned to the United States in 2008. Less than one year later, Elgin, Illinois police officers arrested him on suspicion of domestic violence and obstruction of justice to which he ultimately pled guilty. A federal grand jury then returned an indictment charging Bahena-Navarro with one count of reentry by a previously deported alien in violation of 8 U.S.C. § 1326(a). Following an unfavorable pretrial ruling, Bahena-Navarro attempted to enter a conditional guilty plea, but the district court rejected it on the ground that he was unwilling to knowingly and voluntarily waive certain trial rights. Bahena-Navarro proceeded to trial and he was quickly convicted. On appeal, Bahena-Navarro argues that the district court erroneously rejected his proposed guilty plea. Finding no error in the district court's decision, we affirm.

## I. BACKGROUND

Bahena-Navarro, a Mexican citizen, illegally entered the United States in 1980. His initial trouble with the law began in 2001 when he pled guilty to felony delivery of a controlled substance. Two years later Bahena-Navarro again pled guilty, this time to possession of a controlled substance and unlawful possession of a firearm. Following the second round of convictions, the Department of Homeland Security ordered Bahena-Navarro removed from the United States. He was deported to Mexico on August 27, 2004.

At some point during 2008, Bahena-Navarro reentered the United States. In January 2009, Bahena-Navarro again

ran afoul of the law when his domestic partner called Elgin, Illinois police to report a disturbance. Bahena-Navarro was charged with several counts of domestic battery and one count of obstruction of justice for possessing a false photo-identification card. Bahena-Navarro eventually pled guilty to both charges.

On August 6, 2009, a federal grand jury charged Bahena-Navarro with one count of reentry by a previously deported alien in violation of 8 U.S.C. § 1326(a). Prior to trial, defense counsel suggested that Bahena-Navarro intended to challenge the legality of the 2004 removal order pursuant to 8 U.S.C. § 1326(d).[1] In response, the government filed a motion in limine to preclude Bahena-Navarro's collateral attack. The government's motion included a signed document also bearing Bahena-Navarro's fingerprints indicating that he waived his right to challenge the 2004 deportation. Nevertheless, the district court initially denied the government's motion and scheduled a pretrial hearing to give Bahena-Navarro an opportunity to demonstrate how he met the § 1326(d) elements. Following jury selection but before the jurors were sworn, the district court held a June 14, 2010, hearing on the government's motion. At

---

[1] To successfully challenge the 2004 removal order under § 1326(d), Bahena-Navarro must prove that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."

the hearing, Bahena-Navarro focused his testimony on the impropriety of his 2004 deportation, but the district court found his testimony lacked credibility and that he had "not established any of the elements under [§ 1326(d)]." Accordingly, the district court granted the government's renewed motion in limine and ruled that Bahena-Navarro could not collaterally attack his 2004 removal order.

On June 15, 2010, defense counsel informed the district court that Bahena-Navarro wished to enter a guilty plea on the condition that he could appeal the district court's unfavorable § 1326(d) ruling. The government consented to the proposed plea and the district court then confirmed directly with Bahena-Navarro that he intended to plead guilty. As required by Rule 11 of the Federal Rules of Criminal Procedure, Chief Judge Holderman began explaining that a guilty plea required Bahena-Navarro to waive certain trial rights, including the right not to incriminate oneself. In attempting to explain this first waiver, Bahena-Navarro indicated that he was "a little confused" (Tr. at 230) and his confusion seemingly multiplied when he asked whether he could "come back to another court" following his guilty plea (*Id.* at 231). In an apparent attempt to stave off further confusion, the district court permitted a short recess for Bahena-Navarro to confer with counsel and a Spanish-speaking interpreter. (*Id.* at 232.)

As the hearing resumed, the district court reminded counsel and the defendant that a guilty plea requires Bahena-Navarro to waive his right against self-incrimina-

tion even though Bahena-Navarro had just one day earlier denied wrongdoing during the § 1326(d) hearing. (*Id.* at 234.) Despite the recess and the district court's explanations, Bahena-Navarro continued to express confusion, stating, "I don't want to go to a trial lately." (*Id.*) At this point, the district court suggested that Bahena-Navarro was feigning his confusion and worse yet, lying to the court. (*Id.* at 235.) Exasperated, Chief Judge Holderman said:

> I am going to allow you all of the rights that you're entitled to, and you need not waive any rights at all. We are going to accord you a jury trial. There is a fair and impartial jury waiting in the back room to hear your case. That's what you wanted when I took over this case . . . .

(*Id.*) In response, Bahena-Navarro twice said, "Let's go to trial." (*Id.*) But before finally bringing in the jury, the district court gave Bahena-Navarro one last opportunity to knowingly and voluntarily relinquish his trial rights. (*Id.* at 235-36.) Bahena-Navarro replied, "Why can't I not testify before a jury?" and "I would like to testify before a jury, because they have not helped me as representatives." (*Id.* at 235-36.) In response, the jury was sworn, and Bahena-Navarro was duly convicted of illegally reentering the United States in violation of § 1326(a).

Bahena-Navarro moved for a new trial on two grounds: first, that the district court erred by refusing to credit his pretrial testimony and second, that the district court improperly pushed Bahena-Navarro to

trial. The district court rejected both arguments and later sentenced him to forty-one months' imprisonment. Bahena-Navarro now appeals the district court's decision to reject his conditional guilty plea.

## II. ANALYSIS

We begin by noting the oft-repeated rule that a criminal defendant has "no absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Rather, district courts "retain[] a large measure of discretion to decide whether a guilty plea is appropriate in the circumstances of a particular case." *United States v. Rea-Beltran*, 457 F.3d 695, 700 (7th Cir. 2006) (*citing North Carolina v. Alford*, 400 U.S. 25, 38 n.11 (1970)); *see also* Fed. R. Crim. P. 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty . . . ."). Accordingly, we review the district court's decision to reject Bahena-Navarro's guilty plea under a deferential abuse of discretion standard. *United States v. Hernandez-Rivas*, 513 F.3d 753, 759 (7th Cir. 2008); *Rea-Beltran*, 457 F.3d at 701 ("As a general matter, we trust the district court's assessment of a defendant's knowledge and voluntariness because of the court's ability, unlike our own, to observe the defendant in person and examine his demeanor.").

To guide the proper use of a district court's discretion, Federal Rule of Criminal Procedure 11(b) requires that district courts engage the defendant in a plea colloquy. Generally speaking, the plea colloquy is designed to

ensure that the guilty plea is made in a knowing and voluntary fashion, Fed. R. Crim. P. 11(b)(1)-(2), and that it has some "factual basis," *id.* at R. 11(b)(3). To ensure the defendant has knowingly waived his trial rights, Rule 11(b)(1) outlines fourteen subjects the plea colloquy must address. *Id.* at R. 11(b)(1)(A)-(N). Among others, the defendant must knowingly waive his right to a jury trial, his right to confront and cross-examine adverse witnesses, and his right to testify. To ensure the defendant's plea is grounded in fact, we have previously found that the required factual basis may arise from the defendant's admissions and anything else that appears in the record. *Rea-Beltran*, 457 F.3d at 701; *United States v. Musa*, 946 F.2d 1297, 1302 (7th Cir. 1991).

On appeal, Bahena-Navarro mistakenly seeks to focus our attention on the factual basis for his guilty plea. Although it is certainly possible that Bahena-Navarro satisfied each element of a § 1326(a) charge, thus giving his guilty plea a proper factual basis, we need not decide that issue. Rather, the factual basis for his guilty plea is ultimately irrelevant because Bahena-Navarro never knowingly waived his trial rights, despite the district court's numerous attempts to explain those rights. For example, Bahena-Navarro expressed confusion about the type of plea he was entering, stating, "I thought you said that it was going to be a blind plea." (Tr. at 231.) Bahena-Navarro also expressed confusion about whether he was required to waive his right against self-incrimination. His claimed confusion led to a short recess, after which he became confused about whether his guilty plea would permit him to testify before a jury, stating,

"I would like to testify before a jury . . . ." (*Id.* at 236.)
A district court cannot accept a defendant's condi-
tional guilty plea if that defendant does not under-
stand that he is waiving his right to a jury and
his right against self-incrimination. Fed. R. Crim.
P. 11(b)(1)(C), (E).

For the same reason, Bahena-Navarro is wrong to rely
on our decision in *Rea-Beltran*. There, we were con-
fronted with a defendant charged with unlawful reentry
by a previously deported alien in violation of 8 U.S.C.
§ 1326(a), the same offense at issue in this case. *Rea-
Beltran*, 457 F.3d at 697. At sentencing, Rea-Beltran
attacked his original deportation order by stating that
he thought he had permission to reenter the United
States. *Id.* at 701. The district court interpreted Rea-
Beltran's confusion about his reentry status as an unwill-
ingness to admit guilt and thus, grounds to reject his
proposed guilty plea. We reversed and held that Rea-
Beltran's belief regarding the validity of his reentry is
not an element to a § 1326(a) offense, and accordingly,
the proposed guilty plea had a sufficient factual basis.
*Id.* at 702. Bahena-Navarro analogizes Rea-Beltran's
confusion regarding the legality of his reentry to his
own confusion regarding his waived trial rights. To
Bahena-Navarro, we should reverse the district court
because he was confused in the same way as Rea-
Beltran. This is incorrect.

The critical and perhaps obvious difference is that this
case is about Bahena-Navarro's confusion and ap-
parent unwillingness to waive certain trial rights while

*Rea-Beltran* is about the district court's error in finding that the defendant's proposed guilty plea did not have a factual basis. *Rea-Beltran* offers no escape hatch for Bahena-Navarro's failure to knowingly waive his trial rights.

Perhaps acknowledging that he did not knowingly waive his trial rights, Bahena-Navarro next argues that the district court arbitrarily rejected his guilty plea without fully inquiring into the underlying confusion. In a similar vein, Bahena-Navarro suggests that the district court coerced him into proceeding to trial. The record belies both assertions. In fact, the district court repeated certain questions and gave deeper explanations when Bahena-Navarro initially expressed confusion. For example, the district court in response to Bahena-Navarro's expressed confusion said, "[L]et's end this confusion. . . . What are you confused about, sir?" (Tr. at 230.) The district court also permitted a short recess for Bahena-Navarro to confer with an interpreter and defense counsel. Most importantly, Bahena-Navarro twice said "Let's go to trial," after which the district court still asked Bahena-Navarro three more times whether he understood the rights he was forgoing. (*Id.* at 235.) Far from coercing Bahena-Navarro into proceeding to trial, the plea colloquy transcript suggests that the district court diligently and patiently questioned Bahena-Navarro about his willingness to waive his trial rights.

Finally, Bahena-Navarro argues that the district court erred by not fully explaining its rationale for rejecting the proposed guilty plea. *See Rea-Beltran*, 457 F.3d at 701

("To facilitate meaningful appellate review and 'foster the sound exercise of judicial discretion,' we require that courts state on the record a sound reason for rejecting a plea.") (*quoting United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998)). This argument is without merit as the district court explained its rationale in portions of the plea colloquy *and* within its opinion denying Bahena-Navarro's motion for a new trial. During the plea colloquy, for example, the district court attempted to call the jury after Bahena-Navarro initially declined to waive his right against self-incrimination. (Tr. at 234.) Likewise, the district court's opinion denying Bahena-Navarro's motion for a new trial explained that Bahena-Navarro "did not understand the consequences of his guilty plea." Specifically, Bahena-Navarro "appeared to believe that he would still be able to argue his innocence before a jury or before another judge at some point in the future." The record clearly indicates that the district court plainly explained its reasoning in denying Bahena-Navarro's guilty plea.

## III.  CONCLUSION

Because we find that the district court did not abuse its discretion in rejecting Bahena-Navarro's guilty plea, we AFFIRM Bahena-Navarro's conviction.