In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 12-1268

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN CARLOS ADAME-HERNANDEZ,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:10-cr-0003-SEB-KPF-1 — **Sarah Evans Barker**, *Judge.*

---

ARGUED MAY 29, 2013 — DECIDED AUGUST 18, 2014

---

Before WOOD, *Chief Judge*, and BAUER and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. This appeal arises from the same underlying criminal case that we address in another opinion issued today, *United States v. Kenneth Jones, Ramone Mockabee, Devon Young, and Elisha Drake*, Nos. 11-2267, 11-2288, 11-2535 & 11-2687. Defendant-Appellant Juan Carlos Adame-Hernandez (Adame) sold cocaine to Dominic Robinson and was thereby an upstream source for the cocaine distributed

by the Mockabee organization discussed at length in that opinion. Adame's appeal had been consolidated with the others but because his appeal arises from substantially different circumstances that are unique to him, we have withdrawn the consolidation of his appeal to address it separately in this opinion. Adame's appeal focuses exclusively on a plea bargain gone awry, and we will therefore recite only the facts relevant to his plea.

## BACKGROUND

In 2010, Adame was charged along with numerous other defendants with a criminal drug conspiracy as well as cocaine distribution and illegal reentry of a previously deported alien subsequent to a conviction for the commission of an aggravated felony. See 21 U.S.C. §§ 841(a)(1), 846; 8 U.S.C. § 1326(a). He was later charged with the same offenses in a superseding indictment.

On January 3, 2011, having entered into a binding, written plea agreement with the government under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, Adame filed a petition to enter a plea of guilty to the conspiracy charged in Count One of the superseding indictment. As part of the agreement, the parties stipulated to a base offense level of 38, pursuant to U.S.S.G. § 2D1.1(c)(1). The government agreed not to file an information pursuant to 21 U.S.C. § 851, which would have increased Adame's mandatory minimum sentence because of a prior felony drug conviction. The resulting advisory guidelines range was 188-235 months, and the parties agreed "that a sentence of 204 months' imprisonment and a term of supervised release and fine as imposed by the Court is the appropriate disposition of the case." The agreement reserved to the par-

ties "the right to present evidence and arguments on all sentencing issues not specifically addressed in this Plea Agreement." Counts Two and Three of the superseding indictment, charging cocaine distribution and illegal re-entry, respectively, were also to be dismissed as a part of the deal.

On that same date, the district court held a change of plea hearing. The court addressed Adame personally and discussed the nature of Count One, the possible sentencing range, and his understanding that, by pleading guilty, he was waiving certain constitutional rights. *See* Fed. R. Crim. P. 11(b)(1). The court was careful to call Adame's attention to the plea agreement and the fact that it was binding as a rule "11(c)(1)(C) agreement. And that's a binding plea agreement between you and the Government as to a specific sentence." Plea Hrg. Tr. 15, Jan. 3, 2011. The court explained, "[E]very part of it is binding. It's like a contract between you and the Government lawyers. It's binding on you, and it's binding on them." *Id.* at 14. The agreement explains what would happen if the judge decided not to accept the plea:

> The parties to this agreement acknowledge and understand that while the Court is not a party to this agreement, in the event the Court determines the sentence should not be as set forth herein and therefore rejects the plea agreement, the Court will so advise the defendant, who may then withdraw his plea of guilty, pursuant to Fed. R. Crim. P. 11(c)(4) [sic, the correct provision is Rule 11(c)(5)].

The court also discussed whether the plea was voluntary. *See* Fed. R. Crim. P. 11(b)(2). After the government established a factual basis for the plea through the testimony of Detective Ryan Clark, Adame confirmed that the facts prof-

fered against him were true and pleaded guilty. The court accepted his plea and adjudged him guilty of the conspiracy charged in Count One of the superseding indictment. The court explained that its next task was to determine a sentence, and that the probation office had to prepare a presentence investigation report, which the court would use "along with [the] plea agreement that has the specific sentence bargained for, to decide what a reasonable sentence is … ." *Id.* at 36.

As expected, the probation office prepared a presentence investigation report. The report recommended that Adame be found responsible for more than 150 kilograms of cocaine, resulting in a base offense level of 38. Adame raised two objections to the report: he denied that he personally delivered over 150 kilograms of cocaine, and he objected to a fact underlying an adjustment for his aggravated role in the offense.

About six months after the guilty plea, on July 7, 2011, Adame returned to the district court for sentencing. The record does not disclose that he had any prior notice that anything other than sentencing would occur at that hearing; there is no indication that he knew the government would claim he had breached the plea agreement. At the hearing, defense counsel asserted that while Adame would maintain that he personally delivered less than the amount of cocaine attributed to him in the presentence report, he understood that he could be held accountable for amounts based on his involvement in the conspiracy. The prosecutor argued that Adame had thereby objected to the base offense level stipulated to in the plea agreement and asserted that this constituted grounds to find a breach of the plea agreement. The

prosecutor also asserted that the trial evidence would establish that Adame personally distributed over 150 kilograms of powder cocaine: a government witness would testify that he personally received more than that amount from Adame. The prosecutor questioned whether Adame had accepted responsibility for his conduct and asked the court to set aside the plea and set the case for trial. Notwithstanding this request, the prosecutor expressed uncertainty over whether the alleged breach was material, at one point stating, "Is that breach material? I don't know." The defense counsel argued that Adame's position did not amount to a breach of the plea agreement and did not affect the sentence. Sent. Tr. 16, July 7, 2011. ("[R]egardless of whether we win these points or lose these points, it doesn't change the number of months that are recommended in the plea.") Yet when questioned whether the plea agreement included a stipulation to the offense level that involved a drug quantity calculation, defense counsel responded in the affirmative.

The district court stated that if the defendant "[is] backing off the quantity, that seems to me to be inconsistent with your stipulation." *Id.* at 18. The court added that it seemed that Adame was taking a position that was "inconsistent with the bargain that he struck with the government." *Id.* Then the district court turned to whether the agreed-upon sentence was reasonable, and connected that issue with the government's claim of breach:

> Unaddressed at this point is whether under 3553(a) this is a sentence that the Court could accept. I'm the third-party to this agreement, … and I have my own difficulties with this agreement because, for one thing, Mr. Adame comes in here close to the end of

> the proceedings—and I know what everybody got be-
> cause I meted out those sentences. For him to have
> been in the leadership role that he was in in this con-
> spiracy and a supplier of such a huge amount of co-
> caine, given the other sentences, I don't know that 204
> months is something that I can accept either.
>
> So … the appropriate and well advised position is to
> note the breach, and withdraw the Court's finding of
> guilty in accordance with this plea agreement, and set
> the matter for trial and return to the not guilty plea
> that was originally entered for the defendant.

*Id.* at 20. The court concluded that the agreed sentence was "not consistent with the other sentences that have been meted out given the relative culpability of the defendants," a factor under 18 U.S.C. § 3553(a), and then reiterated that "besides the breach, the Court views the 204 month sentence [as] disparate [from the sentences of co-defendants]. So on my own findings sua sponte I'll reject the plea agreement." *Id.* at 21. At the end of the hearing, Adame asked whether he could abandon his objections to the presentence report and proceed with sentencing under the plea agreement, but the court denied his request, saying, "[I]t's too late." *Id.*

Immediately after vacating its acceptance of the guilty plea, the district judge reset Adame's case for trial in October 2011. However, on August 24th, the Grand Jury returned a second superseding indictment against Adame. This version of the indictment also contained three counts, with Counts Two and Three being identical to the prior iterations. Count One also described a cocaine distribution conspiracy, similar to at least a part of the conspiracy described in the two prior versions of that charge. However, the conspiracy count in

the second superseding indictment focused on Adame's distribution of large quantities of powder cocaine down the chain of distribution, and it omitted much detail from the first version of Count One concerning Mockabee's subsequent redistribution of crack cocaine through the Indianapolis conspirators. Nonetheless, the government does not contend that the conspiracy charged in the second superseding indictment is different from the one previously alleged; and as noted below, a subsequent factual presentation by Detective Clark makes clear that the conspiracy charged in the second superseding indictment was the same one to which Adame had earlier pleaded guilty.

Adame filed a written waiver of an initial appearance and formal arraignment on the second superseding indictment. It is important to note that Adame's waiver does not contain a plea to the charges in the second superseding indictment, despite the fact that the form of such waivers posted on the district court's web site suggests that the waiver contain the language: "I hereby enter a formal plea of not guilty to the Superseding Indictment."[1]

Shortly before the reinstated trial date, on October 3rd, Adame filed a document entitled "Renewed Petition to Enter a Plea of Guilty," which was followed two days later by a document entitled "Amended Renewed Petition to Enter a Plea of Guilty." The only difference between the documents was that the first one only referred to Count One, whereas the amended one also included penalty information about Count Three. The amended petition has many appearances

---

[1]   The   form   is   available   online   at http://www.insd.uscourts.gov/forms/waiver-initial-appearance.

of a form petition that appears to be in circulation among the criminal bar in that district.[2] This petition discusses routine matters such as the procedures involved in entering a guilty plea, the penalties faced, and the rights waived by the plea.

However, the petition filed by Adame in October 2011 contains certain individualized language that appears to have been drafted specifically for his case. The first clue is that it is entitled a "renewed" petition. Then the text of Adame's petition begins by stating that he had previously entered a plea agreement pursuant to Rule 11(c)(1)(C) on January 3rd, the same agreement that was rejected by the district court in July. It also indicates that Adame had been advised and understood that "the Court is not required to follow the plea agreement and has provided me the opportunity to withdraw the plea; and that if the plea is not withdrawn, the Court may dispose of the case less favorably toward me than the plea contemplated." And rather than indicating that he desired to enter a guilty plea to the new, second superseding indictment, the petition states that Adame did not "wish to withdraw his guilty plea" and requested that the matter be set for a sentencing hearing.

At the hearing on October 5th, the district court again addressed Adame personally, discussing the charges against him and the maximum penalties. But there was some confu-

---

[2] We say that because a similar form of petition was used by other defendants who pleaded guilty in this case, *see, e.g.*, *United States v. Dominic Robinson*, No. 1:10-cr-00003-SEB-DML-2, ECF No. 1000; *United States v. Ramone Mockabee*, No. 1:10-cr-00003-SEB-DML-3, ECF No. 651; *United States v. Seron Poole*, No. 1:10-cr-00003-SEB-DML-5, ECF No. 539; and indeed, was used by Adame in his original petition to enter a plea of guilty, *see* ECF No. 675.

sion. The judge, noting what she described as a "convoluted or complicated procedural history" of the case, initially indicated that even though Adame had previously entered a guilty plea, she "withdrew the plea" because he had not been "entirely accepting of the facts the government intended to prove at trial." Plea Hrg. Tr. 4, Oct. 5, 2011. That much was a correct recitation of what happened. But later the judge indicated that she had "refused to accept his plea" to the prior indictment. *Id.* at 6. Despite that description, the judge began an explanation of the plea agreement under Rule 11(c)(1)(C), stating that a recommendation of a 204-month sentence would be made, and that if that sentence was imposed, Adame would give up his right to appeal the sentence. Government counsel promptly corrected the judge to remind her that the 11(c)(1)(C) agreement had been rejected. *Id.* at 8. But even with that reminder, the confusion continued because the judge then referred to a plea agreement that had been filed on the morning of the hearing. *Id.* at 9. But there was no such agreement—the only document filed was the Amended Renewed Petition to Enter a Plea of Guilty.

Nonetheless, the court continued to question Adame about the petition as though it was an agreement, *id.* at 10, and then proceeded through what was a fairly standard Rule 11 colloquy otherwise. It should be noted, though, that Adame was given a rather jumbled explanation of his appellate rights. After confirming with counsel that there was no appellate waiver, the judge stated:

> You have a separate right to appeal, even if you enter your plea, even if you plead guilty to these charges. That's a right to appeal the sentence that's imposed. So you have not given up that right, but you have

given up your right to appeal, we say, the merits of
the case. That means the sufficiency of the Govern-
ment's evidence that underlies these charges. You've
given that right of appeal up. Do you understand
that?

*Id.* at 13. Despite Adame's affirmative answer to that ques-
tion, it is hard for us to discern what he may have under-
stood from that portion of the colloquy. The district court
did not explain whether Adame would also waive his right
to appeal a ruling that occurred before his latest plea was
accepted, but did not go to the "merits" of the case or the
sufficiency of the evidence against him.

Detective Clark again provided a factual basis for the
plea to the conspiracy count, which was essentially the same
background that he had presented at the January guilty plea
hearing along with a few additional facts relating to how
Adame came to join the conspiracy. This indicates that, de-
spite differences in the wording of the conspiracy counts be-
tween the second superseding indictment and the prior
ones, they all pertained to the same conspiracy. Clark also
presented a brief synopsis of facts that would support the
illegal re-entry charge in Count Three, facts which had not
been addressed in the earlier hearing. When asked how he
pleaded to Counts One and Three, Adame responded
"guilty." Announcing that his plea was knowing, voluntary,
and supported by the facts, the court indicated that it was
accepting it and adjudging him guilty of the two counts.

Whereas the original presentence report had recom-
mended a two-level enhancement for Adame's role in the
offense, the report following the October 2011 plea recom-
mended a three-level enhancement. Under the new calcula-

tion, Adame was subject to an advisory guidelines range of 262-327 months for Count One. The district court subsequently held a sentencing hearing and sentenced him to 300 months in prison on Count One and 240 months on Count Three, to be served concurrently.

Adame now appeals to this court, seeking the reinstatement of his initial plea agreement along with the joint recommendation of a 204-month sentence.

## ANALYSIS

Adame argues that the district court erred in finding that he breached the January 3, 2011, plea agreement and in vacating his plea. In the alternative, he argues that even if we conclude that he breached the agreement, he did not commit a substantial breach. He also maintains that the government breached the plea agreement by urging the court to vacate his plea and then encouraging the court to impose a harsher sentence than the agreed-upon 204 months. [3]

He therefore seeks specific performance of his original plea agreement. The government responds that Adame waived his right to contest the government's alleged breach

---

[3] A little more than a week before this sentencing hearing, the government filed an information under 21 U.S.C. § 851(a)(1), alleging that Adame had a prior felony conviction, thereby increasing the mandatory minimum for Count One from ten to twenty years. Adame did not object to this filing as untimely and concedes that he forfeited any right to challenge it. *See United States v. Lewis*, 597 F.3d 1345, 1347 (7th Cir. 2010). However, the government had previously agreed not to file such an information pursuant to its plea agreement with Adame. Because we now hold the government to the terms of that bargain, the filing of that information and the resulting increase in the mandatory minimum were clearly erroneous.

of the plea agreement by ultimately pleading guilty. It also argues that, assuming Adame did not waive his right to contest the district court's rejection of his plea agreement, he breached the agreement and the district court did not abuse its discretion in rejecting it. Tellingly, the government does not assert that the district court had the authority to withdraw Adame's initial, already-accepted guilty plea over his objection, which is exactly what happened here.

Generally, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has [entered a guilty plea], he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Gomez v. Berge*, 434 F.3d 940, 942 (7th Cir. 2006) ("[A]n unconditional plea of guilty operates as a waiver of all formal defects in the proceedings … that occurred before the plea was entered."). The government maintains that Adame's guilty plea on October 5 waived any formal defect occurring before then, including Adame's right to contest the district court's rejection of his plea agreement and any alleged breach of that agreement by the prosecutor. We disagree. But before we discuss the waiver issue, we must review the proceedings chronologically to determine how this case reached this peculiar posture.

At the January 3 change of plea hearing, Adame pleaded guilty to the conspiracy charged in Count One of the superseding indictment. "A defendant has no absolute right to have a court accept a guilty plea, and a court may reject such a plea in the exercise of sound judicial discretion." *United States v. Ajijola*, 584 F.3d 763, 766 (7th Cir. 2009); *see also San-*

*tobello v. New York*, 404 U.S. 257, 262 (1971). Even so, "a court cannot arbitrarily reject a plea, and must articulate on the record a 'sound reason' for the rejection." *United States v. Hernandez-Rivas*, 513 F.3d 753, 759 (7th Cir. 2008) (citation omitted). Recognizing that the district court has significant discretion in accepting or rejecting a guilty plea, we review its rejection of a guilty plea for an abuse of discretion. *Id.*

But here, the district court *accepted* Adame's guilty plea and adjudged him guilty of the offense charged in Count One. The acceptance of Adame's guilty plea was "a judicial act distinct from the acceptance of the plea agreement itself." Wayne R. LaFave et al., 5 *Criminal Procedure* § 21.4(g) (3d ed. 2008) (quoting *In re Ellis*, 356 F.3d 1198, 1200 (9th Cir. 2004) (en banc)).[4] "Once the district court accepts a guilty plea, the

---

[4] The district court accepted the *guilty plea*, which was made pursuant to the Rule 11(c)(1)(C) plea agreement. Adame asserts that the court accepted the *plea agreement*, but the record demonstrates that this is incorrect. The district court said nothing one way or the other about its acceptance or rejection of the *plea agreement*. And after accepting the plea, the court advised Adame that its next task was to determine a sentence, and that the probation office had to prepare a presentence investigation report, which the court would use along with the plea agreement to determine a reasonable sentence. The court's intent was confirmed at the July 7 hearing when it explained to Adame that it was going to decide whether to accept the plea agreement. In fact, when asked whether he understood that the court would "be deciding whether to accept [the plea] agreement," Adame answered, "Yes." Sent. Tr. 9. Adame points to no authority for the proposition that the court's statement that it accepted the guilty plea amounted to acceptance of the plea agreement as well. To the contrary, "[g]uilty pleas can be accepted while plea agreements are deferred. … [T]he Rules [of Criminal Procedure] nowhere state that the guilty plea and the plea agreement must be treated identically." *United States v. Hyde*, 520 U.S. 670, 674–77 (1997).

conditions under which the plea may be withdrawn are governed exclusively by Rule 11 of the Federal Rules of Criminal Procedure." 5 *Criminal Procedure* § 21.4(g); *see also Ellis*, 356 F.3d at 1200, 1206.

Nothing in Rule 11 authorizes a district court to withdraw a defendant's guilty plea for him. Instead, "[w]here a district court accepts a plea of guilty pursuant to a plea agreement, defers acceptance of the agreement itself, and later rejects the terms of the plea agreement, it must, according to the plain language of Rule 11, 'give the defendant an opportunity to withdraw the plea.'" 5 *Criminal Procedure* § 21.4(g) (quoting *Ellis*, 356 F.3d at 1200 (quoting Fed. R. Crim. P. 11(c)(5)(B))); *see also Hyde*, 520 U.S. at 677–78 ("[I]f the court rejects [the plea agreement], then the agreement is terminated and the defendant has the right to back out of his … guilty plea."); *Ellis*, 356 F.3d at 1207 ("Rule 11 thus contemplates that the district court's rejection of a plea agreement allows *the defendant*, *not the court*, to make the next decision with respect to the status of the plea—*i.e.*, whether to withdraw the plea and proceed to trial, or persist in the plea and risk a more severe sentence under the Sentencing Guidelines.") (emphasis added). Thus, where the district court has accepted a guilty plea but rejects the plea agreement, "[t]he only course available for the district court … is to advise the defendant of his rights, including the right to withdraw the guilty plea." *Ellis*, 356 F.3d at 1207. It becomes the defendant's choice whether to stand by his plea or withdraw it. *Id.* at 1208. "Nowhere does Rule 11 provide that the district court may dictate this choice." *Id.*

The district court did not follow these procedures. Having accepted Adame's guilty plea, it decided at the July 7

hearing that it could not accept the plea agreement (which it was authorized to reject), but then on its own withdrew the plea. The court did not give Adame the choice to stand by his guilty plea or withdraw it. Without question, Adame wanted to persist in his plea (and even offered to abandon his objections to the presentence report) and "proceed with the sentencing … as the plea is written." The district court had no authority under Rule 11 to withdraw Adame's plea for him. *See Ellis*, 356 F.3d at 1200, 1208. It therefore abused its discretion in doing so.

Of course, a district court may reject a guilty plea under circumstances outlined in Rule 11(b). *Santobello*, 404 U.S. at 262. For example, the court may reject a plea if it determines that it is supported by an insufficient factual basis or that the plea was not knowing and voluntary. *Cf. Hernandez-Rivas*, 513 F.3d at 760–61 (district court did not abuse its discretion in refusing to accept guilty plea after repeated attempts to obtain a factual basis from the defendant failed and defendant claimed he did not understand that his actions constituted a crime). *See also United States v. Bahena-Navarro*, 678 F.3d 492, 496 (7th Cir. 2012) (district court did not abuse its discretion in rejecting guilty plea where defendant declined to waive certain trial rights). But just as the district court "cannot arbitrarily reject a plea," *Hernandez-Rivas*, 513 F.3d at 759, surely it cannot arbitrarily withdraw a plea; it must articulate at least a "sound reason" for doing so. *See United States v. Rea-Beltran*, 457 F.3d 695, 701–02 (7th Cir. 2006) (district court erred in "refus[ing] to accept" defendant's guilty plea based on its legal misapprehension of what the law required for a conviction); *United States v. Delegal*, 678 F.2d 47, 51 (7th Cir. 1982) (holding that district court abused its discretion in "withdrawing" a guilty plea because it thought one aspect of

the plea agreement, although understood by both parties, should be contained in the written agreement and it was not). A misunderstanding of the law is not a sound reason for rejecting or vacating a plea: "a district court by definition abuses its discretion when it makes an error of law." *Rea-Beltran*, 457 F.3d at 702.

We understand the district court to have withdrawn Adame's guilty plea because (1) it believed he had breached the plea agreement, and (2) it found a 204-month sentence inconsistent with the other sentences meted out to the codefendants—it was "too low." Taking the latter reason first, a district court may reject a Rule 11(c)(1)(C) *plea agreement* based on its belief that the agreed-upon sentence "would be too low to achieve the sentencing goals enumerated in 18 U.S.C. § 3553(a)." *United States v. King*, 506 F.3d 532, 535 (7th Cir. 2007). But the district court's view about an agreed-upon sentence is not a sound reason to reject a plea. "[T]he Rules [of Criminal Procedure] nowhere state that the guilty plea and the plea agreement must be treated identically." *Hyde*, 520 U.S. at 677. As noted, upon concluding that it would reject the plea agreement, the district court's only course was to inform the parties, advise Adame that it would not follow the plea agreement and give him the opportunity to withdraw his plea, and advise him that if the plea was not withdrawn, the court would dispose of the case less favorably to him than contemplated in the plea—i.e., his sentence would be greater than 204 months.

Similarly, the court lacked the authority to withdraw Adame's plea even if he had breached some material term of the plea agreement. "[A] defendant's substantial breach of an unambiguous term of a plea agreement frees the govern-

ment to rescind the deal." *United States v. Kelly*, 337 F.3d 897, 901 (7th Cir. 2003). It does not, however, permit the district court to rescind the plea itself and prohibit the defendant from pleading guilty. The court apparently misapprehended its authority to do so. Therefore, in withdrawing the plea, the district court abused its discretion and committed legal error.

To compound matters, the district court also erred in believing that Adame had breached the plea agreement. "Where, as here, there is no dispute about the relevant facts, we review *de novo* the interpretation of a plea agreement." *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013). "Plea agreements are contracts, and should be interpreted according to principles of contract law. Like other contracts, plea agreements should be enforced consistent with the intent of the parties and the language of the agreement." *United States v. Hernandez*, 544 F.3d 743, 750–51 (7th Cir. 2008) (citations omitted); *see also United States v. Atkinson*, 259 F.3d 648, 654 (7th Cir. 2001) ("[W]e review the language of the plea agreement objectively and hold the government to the literal terms of the plea agreement.") (citation omitted).

Pursuant to the agreement, the parties entered into a binding stipulation that the "base offense level for the offense charged in Count One of the Indictment is 38, pursuant to U.S.S.G. § 2D1.1(c)(1)." The parties did not enter into any stipulation as to the drug quantity, as the district court erroneously seemed to think. And the parties expressly "reserve[d] the right to present evidence and arguments on all sentencing issues not specifically addressed in th[e] Plea Agreement." The plea agreement did not specifically address the drug quantity personally distributed by Adame.

It is well known that, under the Sentencing Guidelines, the amount of drugs involved in a drug conspiracy largely determines a defendant's base offense level. *United States v. Garrett*, No. 13-1182, 2014 WL 2883886, at *9 (7th Cir. June 26, 2014). A base offense level of 38 corresponds to 150 kilograms or more of cocaine. U.S.S.G. § 2D1.1(c)(1). For purposes of calculating the quantity of drugs attributable to a defendant under the Guidelines, in the case of a conspiracy it makes no difference whether the drugs were personally delivered by the defendant, or whether they were delivered by a coconspirator, as long as the other's acts were reasonably foreseeable to the defendant and in furtherance of the conspiracy. *See, e.g.*, *United States v. Davis*, 682 F.3d 596, 616 (7th Cir. 2012) ("The Guidelines instruct that a defendant involved in jointly undertaken criminal activity may be held accountable for all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. Thus, in a drug conspiracy, each conspirator is responsible not only for drug quantities directly attributable to him but also for amounts involved in transactions by coconspirators that were reasonably foreseeable to him.") (internal quotation marks and citations omitted); U.S.S.G. § 1B1.3(a)(1)(B).

Adame's objection to the assertion that he personally distributed over 150 kilograms of cocaine did not jeopardize the calculation of the drug quantity for which he could be held accountable. Nor was his objection inconsistent with his agreement that his base offense level was 38, given that he could be held accountable under § 1B1.3(a)(1)(B) for the drug amounts delivered by others. Furthermore, Adame's position that he did not personally distribute 150 kilograms of cocaine did not violate any stipulation in the written plea

agreement. That the government had a witness who would testify at trial that he personally received more than 150 kilograms of cocaine from Adame is beside the point. Early on in the July 7 hearing the district court apparently recognized how inconsequential Adame's dispute over how much cocaine he personally distributed was: the court said that the defendant's first objection to the presentence report—the objection to the amount of cocaine delivered by Adame—"doesn't require a ruling as I read it." Sent. Tr. 10. But things went off track from there, and the district court, errantly led by the prosecutor's urging, later concluded that Adame had breached the plea agreement. He had not.

That brings us back to the government's waiver argument. We readily acknowledge the general rule that "an unconditional plea of guilty operates as a waiver of all formal defects in the proceedings … that occurred before the plea was entered." *Gomez*, 434 F.3d at 942. The narrow exception to the general waiver rule has been limited to jurisdictional issues. *United States v. Phillips*, 645 F.3d 859, 862 (7th Cir. 2011) ("As a general rule, a defendant who pleads guilty waives his right to appeal all non-jurisdictional issues."). A jurisdictional issue refers not to subject matter jurisdiction, but rather to "a court's statutory or constitutional authority to hale the defendant into court." *Id.* In other words, a guilty plea does not waive a challenge to an error if, as a result of that error, "a court has no power to enter the conviction." *United States v. Seybold*, 979 F.2d 582, 585 (7th Cir. 1992). The Supreme Court recognized in *Menna v. New York*, 423 U.S. 61 (1975), that a guilty plea would not necessarily extinguish a claim under the Double Jeopardy Clause: "Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a

conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Id.* at 62. However, the Court later narrowed this rule in *United States v. Broce*, 488 U.S. 563 (1989), by holding that, in order to circumvent a prior guilty plea on double jeopardy grounds, a defendant must show that he faced trial or punishment from two indictments that were duplicative "on their face." *Id.* at 576. In other words, a defendant may not "seek further proceedings at which to expand the record with new evidence" in order to prove that he has been subjected to double jeopardy. *Id.* at 575. Rather, the double jeopardy must be apparent "at the time the [second] plea was entered on the basis of the existing record." *Id*.

Adame's case fits within this exception to the general waiver rule. He has in essence suffered double jeopardy. The district court withdrew the first plea through its improper application of Rule 11, so Adame has framed the problem as a violation of the federal rules, not the Double Jeopardy Clause. But the district court's error raises the same jurisdictional concerns—namely, the district court's lack of authority to hale him into court to face a subsequent indictment. *See Blackledge v. Perry*, 417 U.S. 21, 31 (1974) (finding an exception to the general waiver rule—even though its "judgment … [wa]s not based upon the Double Jeopardy Clause"— because the case implicated similar jurisdictional concerns). Once the district court accepted his plea the first time, Adame was placed in jeopardy. "[J]eopardy … attaches with acceptance of [a] guilty plea." *U.S. ex rel. Stevens v. Circuit Court of Milwaukee Cnty., Wis., Branch VIII*, 675 F.2d 946, 948 (7th Cir. 1982) (citation omitted); *see Dawson v. United States*, 77 F.3d 180, 182 (7th Cir. 1996). Neither the government nor the district court had the authority to subject him to the

same indictment again. The second superseding indictment presented the same charges for the same conspiracy, and other related acts, as its predecessor. Although the factual description of the conspiracy in Count One changed somewhat, the second superseding indictment clearly referred to the same conspiracy. The government does not contend otherwise. On its face the second superseding indictment was an attempt by the government to redo a plea bargain process that it felt had gone badly, for reasons that remain inexplicable.

We have held that a guilty plea "forecloses any opportunity to contest any alleged antecedent constitutional deprivations." *Gomez*, 434 F.3d at 943. But here Adame is not complaining of a violation "antecedent" to his second guilty plea. The acceptance of the second guilty plea completed the violation. It was an act the district court was utterly without power to perform once Adame pleaded guilty to the first superseding indictment. Adame's claim therefore raises a jurisdictional issue that is not waived by a guilty plea.

In addition, we are mindful of our authority to "to ensure the proper application of [the Federal Rules of Criminal Procedure]." *United States v. Vinyard*, 539 F.3d 589, 595 (7th Cir. 2008) (citation and quotation marks omitted). In *Vinyard* we granted the extraordinary writ of mandamus to correct a serious misapplication of Rule 11 that resulted in a potential double jeopardy problem.[5] *Id.* at 594 ("Vinyard never tried

---

[5] Mandamus was necessary in *Vinyard* because 18 U.S.C. § 3731 bars the United States from appealing certain orders "where the double jeopardy clause of the United States Constitution prohibits further prosecution." *See Vinyard*, 539 F.3d at 592 (noting "a serious question whether § 3731 supports jurisdiction over an appeal"). Here, a mandamus petition is not

to withdraw his guilty plea; it was the court that pulled it away from him."). Ensuring that Rule 11 is followed is particularly important because it is the central procedural safeguard for a defendant who is about to waive several constitutional rights. "Rule 11 is intended to ensure that a defendant makes an informed and voluntary plea" as required under the Due Process Clause. *United States v. Mitchell*, 58 F.3d 1221, 1223, 1225 (7th Cir. 1995) (discussing Rule 11's "constitutional foundation"). In this specific case, the district court failed to adhere to Rule 11, and as a result the plea bargain process was so confused that we cannot say with confidence that Adame's second plea was knowing and voluntary in all respects. The Supreme Court has held that "a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." *McCarthy*, *v. United States*, 394 U.S. 459, 463–64 (1969).[6] We would be unable to supervise the application of the Federal Rules or ensure the integrity of the plea bargaining process if such a fundamental misapplication of Rule 11 escaped review.

In sum, it would be circular to say that Adame lost the ability to contest systematic and pervasive errors in the district court's handling of his plea because he pleaded guilty. Indeed, application of the general waiver rule in this context would have absurd consequences. It would compel a de-

---

necessary or appropriate because we have jurisdiction over Adame's appeal.

[6] Congress has since made the harmless error rule applicable to Rule 11 violations. Fed. R. Crim. P. 11(h). However, as we have explained, the failure to properly apply Rule 11 was not harmless in this instance.

fendant in Adame's position to forgo his second guilty plea and instead head to trial, all so that his original plea would be honored. The entire point of his initial plea was to avoid a trial and the potentially harsher punishments that go with it. That benefit would be lost if Adame were forced to go to trial—in other words, to put his liberty in jeopardy a second time—to vindicate the plea. *See Abney v. United States*, 431 U.S. 651, 660 (1977) ("[T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence.").

The risk of prosecutorial manipulation is also a concern. In *Blackledge*, 417 U.S. at 28, the Supreme Court held that a guilty plea did not waive the petitioner's due process challenge because "[a] person convicted of an offense is entitled to pursue his statutory right … without apprehension that the State will retaliate" by improperly haling him back into court. Likewise, the government may sometimes be tempted to scrap a judicially accepted plea and issue a new indictment to add factual support or correct procedural infirmities. But it cannot do so, any more than it can retry an already-convicted defendant in order to obtain a special verdict rather than a general one. In this case the government obtained a guilty plea, pointed to a trivial "breach" to get the plea withdrawn, and then re-indicted Adame based on a slightly modified description of the original conspiracy count. But had he gone to trial to dispute the withdrawal of his plea, he would have risked losing his credit for acceptance of responsibility as well. In a sense, the government profited from its own breach of the plea agreement (in failing to recommend the agreed 204-month sentence), and

Adame could object only by risking the plea itself. Rule 11 is the defendant's chief bulwark against prosecutorial abuse, and the Rule was not followed in this case. The district court clearly lacked the authority to put Adame in such an untenable situation, so his claim is jurisdictional.

There is one final obstacle to Adame's appeal. We have held that even "double jeopardy rights may be waived by failing to preserve the issue for appeal." *Gomez*, 434 F.3d at 943. But Adame plainly filed a motion to reinstate his earlier plea, and therefore sufficiently raised the issue before the district court. We are particularly reluctant to hold that Adame failed to preserve this issue for review because the district court did not properly articulate the extent of his appeal waiver. The court did not clearly inform Adame that a guilty plea would deprive him of his ability to appeal the court's revocation of his initial plea. *See United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997) ("For an appeal waiver to be valid, it must be express and unambiguous, and the record must clearly demonstrate that it was made knowingly and voluntarily.") (citations and internal quotation marks omitted). Adame did all he could to raise the issue given the complicated posture of this case.[7] A finding of waiver would be inappropriate here in light of this strange, and hopefully unique, procedural history.

---

[7] Adame perhaps could have filed a mandamus petition requesting that we order the district court to reinstate his initial plea agreement, but that petition would surely have failed. Adame had adequate means to obtain his desired relief by appealing to this court. *See Cheney v. U.S. District Court*, 542 U.S. 367, 380 (2004). The possibility that he did not adequately preserve his objections for appeal does not alter the availability of that option. An objection followed by a timely appeal, not mandamus, is the proper means for resolving disputes over the plea bargain process.

Our holding is an exceedingly narrow one, and pertains only to cases in which a defendant pleads guilty after the district court has already accepted a guilty plea to charges that, on the face of the indictment or other charging document, are identical to those the defendant pleads to in the later proceeding. This case fits well within the exception to the general waiver rule already recognized in *Menna* and *Blackledge*, and a guilty plea will still act to bar typical objections against the district court's handling of plea agreements and related issues.

We reach past Adame's second guilty plea and reverse the district court's errors in vacating the plea agreement for his supposed breach. Adame is entitled to the benefit of his bargain. On remand, the district court should advise the parties whether it accepts or rejects the original plea agreement and follow the procedures laid out in Rule 11. Because Adame did not breach the plea agreement, the United States must keep its promise not to file an information concerning his past criminal history pursuant to 21 U.S.C. § 851. In order to provide this discrete issue a fresh look, freed from the complicated procedural history of this case, we believe a re-assignment to another district court judge is appropriate. Likewise, "[w]e expect that a different prosecutor from the U.S. Attorney's office will appear before that judge" and avoid making any unsubstantiated claims that Adame has breached his agreement. *United States v. Diaz-Jimenez*, 622 F.3d 692, 697 (7th Cir. 2010).

## CONCLUSION

For the foregoing reasons, we VACATE Adame's convictions and REMAND with instructions to allow Adame to maintain his guilty plea and be sentenced under the terms of the parties' written plea agreement executed on January 3, 2011. Circuit Rule 36 shall apply on remand.